UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Matthew D. Ficarelli, individually and on behalf of all others similarly situated, | ) ) ) Case No. |
| Plaintiff, | ) ) |
| v. | ) ) ) COMPLAINT--CLASS ACTION |
| Champion Petfoods USA Inc. and Champion Petfoods LP, | ) ) ) JURY TRIAL DEMANDED |
| Defendants. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Matthew D. Ficarelli ("Plaintiff"), individually and on behalf of all other similarly situated persons and entities, upon personal knowledge of facts pertaining to him and information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against defendants Champion Petfoods USA Inc. and Champion Petfoods LP (collectively, "Champion" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. Champion sells a variety of premium-priced dog foods throughout the United States. Its dry dog food products ("Products") are sold under the "Orijen" and "Acana" brand names. Champion's packaging prominently states that the Products are "Biologically Appropriate" and contain "fresh, regional ingredients." Champion's packaging further represents that Orijen "features FRESH, RAW or DEHYDRATED ingredients, from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods." Similarly, Acana's website states "Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically

within 48 hours from when they were harvested."[1] Consumers pay a premium for what Champion advertises and labels as a premium product. A 25-pound bag of "Orijen Original Biologically Appropriate Dog Food" can cost $80 or more—up to four times the price of national brand competitors. A 25-pound bag of Acana Heritage Meats can cost $60 or more.

2. Contrary to Champion's representations regarding the Products, the Products contain excessive levels of harmful heavy metals, including arsenic, lead, cadmium, and mercury.

3. As a result of Champion's misrepresentations, Plaintiff and other putative Class members were harmed by paying for the advertised Products and receiving only an inferior and contaminated product.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Champion, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

5. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Middle District of Tennessee.

## THE PARTIES

6. Matthew D. Ficarelli resides in Davidson County, Tennessee. Prior to October of 2017, Plaintiff was a resident of the State of Florida. Since 2010, Plaintiff has purchased Acana

---

[1] https://acana.com/usa/about-acana/fresh-regional-ingredients/ (last accessed April 9, 2018).

2

Case 3:18-cv-00361   Document 1   Filed 04/11/18   Page 2 of 14 PageID #: 2

dry dog food products approximately monthly, including Acana Heritage Meats, Acana Ranchlands, Acana Fresh Fish, and Acana Grasslands varieties. Plaintiff purchased the Products because he believed they were healthy, quality products for his pets. Plaintiff would not have purchased the Products or would not pay as much for the Products were he aware of the excessively high levels of toxic heavy metals in the Products. Plaintiff did not receive what he paid for.

7. Defendant Champion Petfoods USA Inc. is incorporated in Delaware. Champion Petfoods USA Inc.'s headquarters are in Auburn, Kentucky.

8. Defendant Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business located in Edmonton, Alberta, Canada. Champion Petfoods LP owns, operates, and controls Champion Petfoods USA Inc.

9. Defendant formulates, develops, manufactures, markets, and distributes dry dog food products under the brand names Orijen and Acana throughout the United States.

## FACTUAL ALLEGATIONS

10. Champion touts its products as "The World's Best Petfood." Champion produces a variety of dry dog foods under the Orijen and Acana brands and sells them throughout the United States.

11. The packaging of Orijen Original dry dog food touts the food as "the fullest expression of our biologically appropriate and fresh regional ingredients commitment," and further describes its supposed "unmatched inclusions of free-run poultry, wild-caught fish and whole nest-laid eggs—sustainably farmed or fished in our region and delivered daily, fresh or raw and preservative-free."

12. The packaging further states that Orijen "features fresh, raw or dehydrated ingredients from minimally processed poultry, fish and eggs that are deemed fit for human consumption prior to inclusion in our foods."

13. The packaging of Acana dry dog food contains substantially similar representations. For example, the package for one variety of Acana dry dog food states that the product is "bursting with richly nourishing meat and protein from free-run chicken, whole, nest-laid eggs and wild-caught flounder—all delivered fresh from our region so they're loaded with goodness and taste," further boasting that all content is "from poultry, fish and eggs passed fit for human consumption."

14. Acana's website further represents that "Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically within 48 hours from when they were harvested."[2]

15. Contrary to these representations, Champion's Products are not composed of high quality ingredients fit for human consumption or biologically appropriate. To the contrary, Champion's Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury.

16. According to a white paper[3] published by Champion, the Products contain the following average concentrations of heavy metals:

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---|---|---|---|---|
| Average concentration | 890 | 230 | 90 | 20 |

---

[2] https://acana.com/usa/about-acana/fresh-regional-ingredients/ (last accessed April 9, 2018).
[3] http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf (last accessed April 9, 2018).

17. These concentrations are excessive, dangerous, and render Champion's representations regarding the Products, including the packaging of the Products, false and misleading.

18. For example, of the 11 pounds of "fresh, raw, or dehydrated animal ingredients" in a 13-pound bag of Orijen Original, the package claims to contain 8.5 pounds of chicken, turkey, and eggs—over 77% of the "fresh, raw, or dehydrated animal ingredients."

19. Chicken, turkey, and eggs consumed by humans contain no or only negligible amounts of arsenic, lead, cadmium, and mercury:[4]

|  | Arsenic (ug/kg) | Lead (ug/kg) | Cadmium (ug/kg) | Mercury (ug/kg) |
|---|---|---|---|---|
| Chicken | 3 | 0 | .3 | 0 |
| Turkey | 6 | 0 | .1 | .1 |
| Eggs | 0 | .4 | 0 | .1 |

20. Arsenic, lead, cadmium, and mercury are toxic to dogs. A dog experiencing lead poisoning may exhibit vomiting, diarrhea, lethargy, loss of appetite, abdominal pain, regurgitation, weakness, hysteria, seizures, and blindness.[5] A dog experiencing arsenic poisoning may exhibit vomiting, diarrhea, abdominal pain, lethargy, staggering, bright red blood in feces, loss of consciousness, and death—or more subtle symptoms from chronic exposure like poor appetite and

---

[4] This table was prepared using data from the FDA's Total Diet Study, revised April 2017, available at: https://www.fda.gov/downloads/Food/FoodScienceResearch/TotalDietStudy/UCM184301.pdf (last accessed April 9, 2018). Data for chicken, turkey, and eggs comes from mean concentrations for TDS Food No. 240, 26, and 37, respectively.

[5] https://www.petmd.com/dog/conditions/digestive/c_dg_lead_poisoning (last accessed April 9, 2018).

weight loss.[6] Heavy metals tend to accumulate in dogs and other animals, so long-term exposure to even small quantities of heavy metals can cause deleterious health effects.

21. Ingredients with the heavy metal concentrations found in Champion's Products are not of the advertised quality.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed class:

> All persons and entities who purchased a Champion dry dog food product for end use and not for resale (the "Class").

Excluded from the Class are Defendant, including any entity in which Defendant has a controlling interest, is a subsidiary of Defendant, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant.

23. In addition, Plaintiff seeks certification of the following class of Florida consumers:

> All persons and entities who purchased a Champion dry dog food product for end use and not for resale in the state of Florida (the "Florida Class").

Excluded from the Florida Class are Defendant, including any entity in which Defendant has a controlling interest, is a subsidiary of Defendant, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant.

---

[6] https://www.petmd.com/dog/conditions/digestive/c_dg_arsenic_poisoning (last accessed April 9, 2018).

6

24. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions involving the same claims.

25. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, Class members number in the thousands.

26. **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves the following common questions of law or fact which predominate over any potential questions affecting only individual Class members:

   (a) Whether Champion engaged in the wrongful conduct as alleged herein;

   (b) Whether Champion misrepresented the Products to Plaintiff and the other Class members;

   (c) Whether Champion breached the express warranties it made to Plaintiff and the other Class members;

   (d) Whether Champion breached implied warranties;

   (e) Whether Plaintiff and the other Class members are entitled to actual damages; and

   (f) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution, declaratory, and injunctive relief.

27. Champion engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical misrepresentations, business practices, and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate in this action.

28. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff and all other Class members were damaged as a result of the uniform misconduct described above. Additionally, identical claims and legal theories are asserted on behalf of Plaintiff and the other Class members.

29. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff's interests are aligned with and do not conflict with the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

30. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, and other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Champion, making it impracticable for Class members to individually seek redress for Champion's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# CLAIMS

## Count I – Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

### (On Behalf of the Florida Class)

31. Plaintiff adopts and realleges paragraphs 1–30 of this Class Action Complaint.

32. The express purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). The FDUTPA declares such acts and practices to be unlawful. Fla. Stat. § 501.204(1).

33. The sale of the Products was a "consumer transaction" within the scope of FDUTPA.

34. Plaintiff is a "consumer" as defined by Section 501.203, Florida Statutes.

35. Defendant's Products are "goods" within the meaning of FDUTPA, and Defendant is engaged in "trade or commerce" within the meaning of FDUTPA.

36. Defendant's unfair and deceptive practices are likely to mislead and have misled reasonable consumers, such as Plaintiff and members of the Florida Class.

37. Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

38. Plaintiff and Class members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they paid money for Defendant's mislabeled Products.

39. Reasonable consumers rely on Defendant to honestly represent the contents of their Products.

40. Defendant has deceived reasonable consumers, like Plaintiff and members of the Class, into believing the Products are something they are not; specifically that the Products are being supplied in accordance with representations.

41. Pursuant to Sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and members of the Class make claims for damages, attorney's fees, and costs. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant. Pursuant to Section 501.211(1), Florida Statutes, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices and for restitution and disgorgement.

42. Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's violations of FDUTPA.

## Count II – Breach of Express Warranty

43. Plaintiff adopts and realleges paragraphs 1–30 of this Class Action Complaint.

44. The packaging of the Products contained express warranties.

45. Defendant breached these warranties in that the Products do not contain high quality healthy ingredients and instead contain excessive quantities of heavy metals. The Products are not biologically appropriate.

46. Defendant is and has been aware of these defects in the Products and has chosen not to cure it.

47. Plaintiff and other Class members have been damaged by Defendant's breach of its express warranty obligations.

## Count III – Breach of Implied Warranty

48. Plaintiff adopts and realleges paragraphs 1–30 of this Class Action Complaint.

49. Defendant, as the manufacturer, marketer, distributor, and seller of the Products, is a merchant.

50. Plaintiff and the other Class members purchased the Products that were manufactured and sold by Defendant in consumer transactions. The implied warranty of merchantability attended the sale of the Products.

51. To be merchantable, the products must be at least such as:

(a) Pass without objection in the trade under the contract description;

(b) In the case of fungible goods, are of fair average quality within the description;

(c) Are fit for the ordinary purposes for which such goods are used;

(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(e) Are adequately contained, packaged, and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any.

52. The Products are not adequately contained, packaged and labeled because they are packaged as containing healthy, high quality ingredients, but instead contain excessive quantities of harmful heavy metals.

53. The Products do not conform to the promises and affirmations of facts made on their containers and labels because they do not consist of healthy, high quality ingredients that would be fit for human consumption, or ingredients that are "biologically appropriate," as warranted.

54. The Products do not pass without objection in the trade under the contract description.

55. The Products are not of fair average quality within the description, are unfit for the ordinary purposes for which such goods are used, and are inadequately contained, packaged, and labeled.

56. Plaintiff and the other members of the Class did not receive the Products as warranted. The products they purchased were worth less than the products they were promised and expected.

57. As a result of Defendant's breach of warranty, Plaintiff and members of the Class suffered damages.

## Count IV – Unjust Enrichment

58. Plaintiff adopts and realleges paragraphs 1–30 of this Class Action Complaint.

59. Plaintiff and other members of the Class purchased Defendant's products to their detriment because they paid a premium price expecting the goods to conform to the representations that the Products contained high quality, healthy ingredients that would be fit for human consumption, and are "biologically appropriate." Had Plaintiff and the other members of the Class known that the Products contained excessive quantities of heavy metals, they would not have paid the price they did. Plaintiff and the other members of the Class did not receive the benefit of the bargain.

60. Defendant knew of the actual ingredients of, and the percentage of heavy metals contained in, the Products. Defendant sold the Products at a premium price. Defendant is now retaining a benefit to the detriment of Class members. Allowing Defendant to retain the benefits of its inflated sales price while Plaintiff and other members of the Class have the detriment of having paid a price they would not have paid had they not been deceived by Defendant's labels, violates the fundamental principles of justice, equity, and good conscience.

12

Case 3:18-cv-00361   Document 1   Filed 04/11/18   Page 12 of 14 PageID #: 12

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

A. Certifying the Classes under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Champion engaged in the unlawful conduct alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

F. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

G. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: April 11, 2018

Respectfully submitted,

/s/ Kevin H. Sharp

Kevin H. Sharp (TN Bar 16287)
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street
Suite 3100
Nashville, TN 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com

13

Ben Barnow* (IL Bar 0118265)
Erich P. Schork* (IL Bar 6291153)
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Attorneys for Plaintiff and the putative Classes*
*\* pro hac vice application forthcoming*