IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MATTHEW D. FICARELLI, individually )
and on behalf of others similarly situated, )
                                                       )
        Plaintiff, )        NO. 3:18-cv-00361
                                                       )        JUDGE RICHARDSON
v. )
                                                         )
CHAMPION PETFOODS USA, INC. and )
CHAMPION PETFOODS LP, )
                                                        )
        Defendants. )

## **MEMORANDUM OPINION**

Before the Court is the Motion to Dismiss (Doc. No. 9) of Defendants Champion Petfoods USA, Inc. and Champion Petfoods LP. Plaintiff, Matthew D. Ficarelli, responded in opposition (Doc. No. 26), and Defendants replied (Doc. No. 31). For the reasons discussed below, the Motion will be denied in part and deferred in part.

### **FACTUAL BACKGROUND[1]**

Defendants sell a variety of premium-priced dog foods (the "Products") throughout the United States. (Doc. No. 1 ¶ 1.) Defendant Champion Petfoods USA, Inc. is incorporated in Delaware and its headquarters are in Kentucky. (*Id.* ¶ 7.) Defendant Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business in Canada. (*Id.* ¶ 8.) Champion Petfoods LP owns, operates, and controls Champion Petfoods USA. (*Id.*) Plaintiff resides in Davidson County, Tennessee. (*Id.* ¶ 6.) Prior to October 2017, Plaintiff was a resident

---

[1] For purposes of Defendants' Motion to Dismiss, the Court will assume to be true all the following alleged facts, which are taken from Plaintiff's complaint.

1

of Florida. (*Id.*) Since 2010, Plaintiff has purchased Defendants' dry dog food products approximately monthly. (*Id.*)

Defendants tout their products as "The World's Best Petfood." (*Id.* ¶ 10.) Defendants' dry dog food products (the "Products") are sold under the "Orijen" and "Acana" brand names. (*Id.*) Defendants' packaging prominently states that the Products are "biologically appropriate" and contain "fresh, regional ingredients." (*Id.* ¶ 1.) Defendants' packaging also represents that Orijen features fresh, raw, or dehydrated ingredients from minimally processed poultry, fish, and eggs that are deemed fit for human consumption prior to inclusion in Defendants' foods. (*Id.* ¶ 12.) The packaging of Acana dry dog food contains substantially similar representations. (*Id.* ¶ 13.) Acana's website also states, "Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically within 48 hours from which they were harvested." (*Id.* ¶ 14.) Consumers pay a premium for what Defendants advertise and label as premium product, as a bag of Defendants' dog food can cost up to four times the price of national brand competitors'. (*Id.* ¶ 1.)

Contrary to these representations, Defendants' Products are contaminated with excessive quantities of heavy metals, including arsenic, lead, cadmium, and mercury, which are toxic to dogs. (*Id.* ¶¶ 15, 20.) The concentrations of these heavy metals in Defendants' Products are dangerous and render Defendants' representations regarding the Products false and misleading. (*Id.* ¶ 17.)

Based on these alleged facts, Plaintiff brings the following claims on behalf of himself and others similarly situated: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) breach of express warranty; (3) breach of implied warranty; (4) unjust

enrichment. (*Id.* ¶¶ 31-60.) Defendants now move to dismiss these claims under Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6).[2]

## LEGAL STANDARD

### I. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Therefore, subject-matter jurisdiction is a threshold issue that the Court must address and resolve prior to reaching the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Moreover, 'where subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion.'" *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Id.* at 816. A facial attack is a challenge to the sufficiency of the pleading itself, requiring the Court to take allegations in the complaint as true and construing those allegations in the light most favorable to the non-moving party. *See id.* A factual attack, on the other hand, is a challenge to the factual existence of subject-matter jurisdiction. *See id.* at 817. In considering whether jurisdiction has been

---

[2] Because the Court finds that Plaintiff has failed to allege personal jurisdiction, as discussed in more detail herein, it does not address Defendants' arguments under Rule 12(b)(6). Instead, the Court defers ruling on those arguments unless and until Plaintiff files an amended complaint as contemplated below and Defendants in response renew their Rule 12(b)(6) arguments in connection with such amended complaint.

3

proved as a matter of fact, a trial court has wide discretion to allow affidavits, documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In evaluating a factual attack, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence to arrive at its decision of whether it has power to hear the case. *See United States v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 782 F.3d 260, 265 (6th Cir. 2015).

## II. Rule 12(b)(2)

Rule 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "In a diversity case, a plaintiff must satisfy the state-law requirements for personal jurisdiction. Thus, [the plaintiff] must demonstrate that both due process and the [forum state's] long-arm statute are satisfied." *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (citation omitted). In other words, there is "a two-step test to determine whether the district court properly [has] personal jurisdiction over [the defendant]. First, [the district court] must determine whether [the forum state's] law authorizes jurisdiction. If it does, [the district court] must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008) (citation omitted).[3] "[I]f jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn v. Zakharov*, 667 F.3d 705, 711–12 (6th Cir. 2012).

---

[3] The due-process inquiry is necessary in addition to the statutory inquiry because "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). In other words, even if a state asserts personal jurisdiction over a foreign defendant under the state's long-arm statute, such assertion, to be valid, must comport with due process.

4

In fact, for Tennessee federal courts sitting in diversity, it is always unnecessary to analyze jurisdiction under Tennessee's long-arm statute separately from analyzing the permissibility of jurisdiction under the Due Process Clause. This is because Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, has been interpreted to be "coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution, and thus, the jurisdictional limits of Tennessee law and of federal constitutional due process are identical." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (internal quotation marks and citation omitted). Thus, unlike for courts in some states, for a Tennessee court it is appropriate to collapse the two-part jurisdictional inquiry into one part, *i.e.*, the due-process inquiry. *EdgeAQ, LLC v. WTS Paradigm, LLC*, No. 3:14-CV-2264, 2015 WL 3453758, at *3 (M.D. Tenn. May 29, 2015) (quoting *Grober v. Mako Prods., Inc.,* 686 F.3d 1335, 1345 (Fed. Cir. 2012)); *see also Conn*, 667 F.3d at 717.

For the Court to have personal jurisdiction over a defendant, the plaintiff must show that the defendant has (or had) sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). These principles, though time-tested and essential, constitute merely the beginning of the applicable due process analysis, which as a whole is more involved and specific than these principles would indicate.

Personal jurisdiction comes in two forms: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). "General jurisdiction depends on

continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." *Id.* at 678-79 (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). With respect to a corporation, the place of incorporation and principal place of business are typically the bases for general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). It is true that these two places are not the only two places where general jurisdiction could possibly exist. *See id.* at 137-39. Absent "exceptional" circumstances, however, a foreign corporation will be considered "at home" only in its place of incorporation and principal place of business. *See BNSF Railroad Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

In contrast to general jurisdiction, specific jurisdiction must arise out of or relate to the defendant's contacts with the forum state—principally an activity or occurrence that takes place in the forum state. *Bristol-Myers*, 137 S. Ct. at 1780; *Miller*, 694 F.3d at 679 ("Specific jurisdiction . . . grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state."). Under the constitutional due-process analysis, for specific jurisdiction to exist: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. *Intera*, 428 F.3d at 615. If it finds that all three of these are satisfied, then the court will recognize specific jurisdiction. *Miller*, 694 F.3d at 680.

Plaintiffs have the burden of showing personal jurisdiction, but "that burden is relatively slight where . . . the . . . court rules without conducting an evidentiary hearing." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (internal quotation marks and citation

omitted). When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). To defeat the Rule 12(b)(2) motion in such a case, the nonmoving party "need only make a prima facie showing of jurisdiction." *Id.* (quoting *CompuServe*, 89 F.3d at 1262). "[A] court disposing of a 12(b)(2) motion [without an evidentiary hearing] does not weigh the controverting assertions of the party seeking dismissal . . . because we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe*, 89 F.3d at 1262 (internal quotation and emphasis omitted). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Id.*

However, if the court chooses to have an evidentiary hearing to decide upon the Rule 12(b)(2) motion, "the plaintiff must establish personal jurisdiction by a preponderance of the evidence." *Kelley v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 509 (M.D. Tenn. 2005). The same standard will apply if the either the issue is reserved for decision at trial or if the reason no evidentiary hearing was held is that there was no real dispute as to the facts or the extent of discovery. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

**DISCUSSION**

**I.     Article III Standing**

Defendants argue that Plaintiff fails to plausibly allege Article III standing because he has not sufficiently alleged that he suffered harm.[4] The Court disagrees.

A motion that alleges lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction. *See Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722 (E.D. Mich. 2014) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). The Article III standing doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. *Spokeo*, *Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing is a threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element of standing. *Id.* at 518.

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007)). The Supreme Court

---

[4] Defendants' motion is properly characterized as a facial attack on subject-matter jurisdiction. For example, Defendants argue, "[Plaintiff] does not allege that he consumed the food or intended to consume the food . . . or that his dog was physically injured by the miniscule amounts of heavy metals." (Doc. No. 10 at 16). Also, in their reply, Defendants argue, "Because Plaintiff's injury theory is tied to his allegation that Champion's products are not made up of ingredients fit for human consumption, the Complaint does not plausibly allege injury-in-fact." (Doc. No. 31 at 2.)

has emphasized that the requirement that an injury-in-fact be "concrete and particularized" encompasses two distinct requirements. *Spokeo*, 136 S. Ct. at 1548. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." *Id.* Unless an alleged injury satisfies both requirements, it cannot give rise to standing under Article III. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1193 (M.D. Tenn. 2017).

Plaintiff's allegations satisfy the Article III standing requirements. Plaintiff alleges that he paid (or paid too much) for dog food that had excessively high levels of toxic heavy metals, which he purchased because of Defendants' deceptive and false advertisements, and he seeks money damages for the alleged harm. (Doc. No. 1 ¶¶ 1-3, 6, 42, 47, 57.) Such alleged harm is concrete, particularized and actual; fairly traceable to the alleged deceptive and false advertising of Defendants; and likely to be redressed by a decision in favor of Plaintiff (should he prove entitled to such a decision). *See Loeb v. Champion Petfoods USA Inc.*, No. 18-CV-494-JPS, 2018 WL 2745254, at *5 (E.D. Wis. June 7, 2018) ("Plaintiff's allegations easily satisfy these [standing] elements. She pleads that she paid too much for unsafe dog food, that this was caused by Defendants' deceptive and false advertisements, and she seeks money damages as compensation.")

Defendants present several arguments against this finding, none of which the Court finds persuasive. First, Defendants argue that Plaintiff's conclusion that he was harmed by purchasing a product that was inferior and contaminated is not plausible because he received the product that was advertised, *i.e.,* a safe premium dog food. However, this argument addresses the merits of Plaintiff's claim of wrongdoing by Defendants, not whether the complaint's allegations satisfy Article III's standing requirements; this argument thus misses the mark, because "standing in no

9

way depends on the merits of the plaintiff's contention that particular [alleged] conduct is illegal." *Warth*, 422 U.S. at 500. Defendant here confuses the issue of whether Defendant has plausibly alleged standing with the issue of whether Plaintiff plausibly has alleged wrongdoing by Defendants (*i.e.*, providing Plaintiff a product that was inferior to the product Defendant advertised it to be). Moreover, because Defendants have made a facial (rather than factual) attack on subject-matter jurisdiction (in particular, standing), the Court must presume all allegations in the complaint are true, just as on a Rule 12(b)(6) motion. *See Wayside Church*, 847 F.3d at 816. Thus, it is not proper for the Court, when ruling on a challenge to standing, to assess whether the plaintiff's allegations of wrongdoing are factually correct; instead, the Court assumes *arguendo* that the defendant(s) engaged in the wrongdoing alleged.

Second, Defendants assert that Plaintiff's contention that the Products are unsafe for human consumption is conclusory and conjectural because he does not cite to any human standard which the Products supposedly violate. Again, Defendants are, misguidedly, basing their attack upon standing on a challenge to Plaintiff's allegations of wrongdoing by Defendants. Defendants reveal as much when they write, "Because Plaintiff's injury theory is tied to his allegations that Champion's products are not made up of ingredients fit for human consumption, the Complaint does not plausibly allege injury-in-fact." (Doc. No. 31 at 2). Defendants here again confuse the issue of whether Defendant has plausibly alleged injury-in-fact (the first of the three standing requirements) with the issue of whether Plaintiff plausibly has alleged wrongdoing by Defendants (*i.e.*, falsely claiming that their products are fit for human consumption). Thus, even if Defendants are correct that Plaintiff's contention here is conclusory and thus excepted from the general rule that Plaintiff's allegations of Defendants' wrongdoing presently must be accepted as true, that is

immaterial because under *Warth*, the merits of such allegations are not relevant to the inquiry into standing.

Third, along the same lines, Defendants, argue that Plaintiff does not cite to any fact, study, or document demonstrating that the levels of heavy metals in the Products are not fit for human consumption. But such citation is not necessary to plausibly allege standing, for two reasons. First, Defendants here are again challenging the merits of Plaintiff's allegations of wrongdoing, which is not helpful in making an attack upon standing. Second, even if the validity of such allegations were material in challenging standing, Defendants fail to explain why citation to this particular information is necessarily required for Plaintiff's allegations to be accepted as true at this stage. *Cf. Loeb*, 2018 WL 2745254, at *5 (rejecting argument that the complaint failed to satisfy *Iqbal* and *Twombly* because it did not allege the standard or metric by which the defendants' products would be considered safe for dogs or fit for human consumption).

Fourth, Defendants argue that this Court should follow those courts that have dismissed claims for lack of Article III standing when the claims were premised on the defendant's alleged failure to disclose levels of heavy metals that (at least according to the respective plaintiffs) were under FDA standards. (Doc. No. 10 at 14). Defendants cites two such, namely *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3d Cir. 2010) and *Boysen v. Walgreen Co.*, No. C-11-06262-SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012). The Court finds that these cases, and those on which they rely, are (in addition to being non-precedential for this Court) distinguishable from the present case because, *inter alia*, Defendants themselves state that there are no FDA regulations as to the relevant heavy-metal concentrations in human or dog solid food. (*See* Doc. No. 31 at 3-4.) *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (distinguishing *Boysen* on this basis); *Loeb*, 2018 WL 2745254, at *5 (same). Moreover, in those cases, there is no indication

11

that the ostensible (but not actual, according to the plaintiffs) low levels of metals in the products there at issue would have tended to induce the plaintiffs' purchases nearly as strongly as they would have induced Plaintiff's purchases of the Products, given the very idea behind the Products and Defendants' marketing of them; for this reason, the connection between Plaintiff's alleged injury and his alleged economic harm appears stronger than in those cases.[5] Finally, to the extent that these cases (especially *Boysen*) rely upon a blanket rule that economic injury will not support standing in product liability cases, the Court declines to follow them because the Court is aware of no binding precedent that would automatically preclude this specific category of alleged harm from constituting an injury-in-fact in a products liability case (even assuming that the instant case is in fact properly deemed a "products liability" case).

Fifth, and relatedly, Defendants argue that Plaintiff needs to allege a physical injury to himself or his dog from consuming the Products. But Plaintiff's allegation that he suffered a monetary loss for paying for (or paying more for) the Products because of Defendants' misrepresentation is sufficient. *See Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 581 (6th Cir. 2013) ("Plaintiffs' allegation that they suffered a monetary loss by paying more for a cold remedy because of the company's misrepresentation establishes a cognizable injury [for purposes

---

[5] Relatedly, *Koronthaly* is distinguishable because there the Third Circuit held that the plaintiff "has not demonstrated a concrete injury-in-fact" in light of the absence of "any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect[.]" 374 F. App'x at 259. In the present case, by contrast, Plaintiff has alleged that, given the marketing of the Products, and the correspondingly very high prices allegedly justified by the characteristics of the Products as marketed, the Products failed to serve their intended purpose (as expressed in such marketing) and were worth objectively less than what one might reasonably expect. *Koronthaly* is further distinguishable because there the plaintiff "asserted only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her[.]" *Id.* By contrast, in the present case, Plaintiff has alleged a far more substantial and objective injury.

of standing]."); *Loeb*, 2018 WL 2745254, at *5 (rejecting the defendants' standing argument "that Plaintiff needs to plead a physical injury to her or her pet from consuming the contaminated food, [because] that is not what she seeks to redress. Rather, Plaintiff complains about paying too much for what she maintains was a low-quality product.")[6] As indicated above, to the extent that Defendant relies on non-binding cases holding otherwise, the Court declines to follow them. Accordingly, the Court will not grant Defendants' motion to dismiss based on a lack of standing.

## II. Personal Jurisdiction

Defendants alternatively move to dismiss the complaint for lack of personal jurisdiction. Because there has been no evidentiary hearing on the issue of personal jurisdiction, and the parties have not requested one, the Court limits its inquiry to whether Plaintiff has established a "prima facie showing of jurisdiction," *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), and considers the pleadings in the light most favorable to Plaintiff. *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009). Still, it remains Plaintiff's burden to make his showing of jurisdiction, and the complaint must establish with reasonable particularly those specific facts

---

[6] The court's discussion in *Zeiger* is on point:

> A "quintessential injury-in-fact" occurs when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). This is precisely what plaintiffs do here. *See* Am. Compl. ¶¶ 25–27 (describing that each individual plaintiff "was unaware that the Contaminated Dog Foods contained any level of lead, arsenic, or BPA and would not have purchased the food if that was fully disclosed"). Plaintiffs' claims are premised on their allegations that were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their Products, plaintiffs would not have purchased and spent money on their Products. Similar allegations in the food mislabeling context have repeatedly been held sufficient to establish an economic injury for purposes of both constitutional and statutory standing.

304 F. Supp 3d at 846. Though obviously non-binding on this Court, *Zeiger* is, the Court believes, persuasive.

that would support jurisdiction. *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). As indicated above, Plaintiff can meet this burden by showing either general jurisdiction or specific jurisdiction.

This Court lacks general personal jurisdiction over Defendants, as neither Defendant has its place of incorporation or principal place of business in Tennessee. Defendant Champion Petfoods USA Inc. is incorporated in Delaware and has its principal place of business in Kentucky. (Doc. No. 1 ¶ 7.) Defendant Champion Petfoods LP is a Canadian limited partnership and has its principal place of business in Canada. (*Id.* ¶ 8.) Moreover, Plaintiff has alleged no other basis—"exceptional" or otherwise—for general jurisdiction.

Furthermore, Plaintiff's allegations fail to satisfy his prima facie showing of specific jurisdiction. Plaintiff alleges, "Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Middle District of Tennessee." (*Id.* ¶ 5.) Plaintiff also alleges that he resides in Davidson County, Tennessee and that prior to October 2017, he was a resident of Florida. (*Id.* ¶ 6.) Plaintiff further alleges that since 2010, he has purchased the Products approximately monthly. (*Id.*) However, nowhere does Plaintiff state that he purchased the Products in Tennessee. This is a critical flaw in the complaint because it is Plaintiff's purchase of the Products that gives rise to this lawsuit. Although the Court must construe the complaint in the light most favorable to Plaintiff, the Court cannot reasonably infer that Plaintiff purchased the dog food in Tennessee. For example, given that Tennessee is adjacent to Kentucky (the border of which is within commuting distance of some if not all of Davidson County), Plaintiff conceivably could work in Kentucky and purchase the Products there and only there. In addition, Plaintiff's allegation that "a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Middle District of Tennessee" is insufficient

because it is wholly conclusory and does not allege with reasonable particularly those specific facts that would support jurisdiction.

Likewise, Plaintiff's belated, unsworn statement that he purchased Champion's products in Tennessee (Doc. No. 26 at 8)) is to no avail because the Court cannot consider allegations made solely in response to a motion to dismiss. *Thompson v. City of Memphis*, No. 09-2658-D/P, 2010 WL 11602029, * 5 (W.D. Tenn. June 29, 2010) (citing *Carr Carriers, Inc. v. Ford*, 747 F.2d 1101, 1107 (7th Cir. 1984)).

Accordingly, because Plaintiff has not made the required prima facie showing of general or specific personal jurisdiction, Defendants' argument for dismissal under Rule 12(b)(2) is well taken. According, this action will be dismissed unless Plaintiff files an amended complaint consistent with the Order accompanying this Memorandum Opinion.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is DENIED insofar as it seeks dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction (standing), deferred insofar as it seeks dismissal under Rule 12(b)(6) for failure to state a claim, and deferred insofar as it seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction.

An appropriate accompanying order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE